LUIGI BUITRAGO,

                    Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,                    No. 18-cv-261(EGS)

                    Defendant.

**MEMORANDUM OPINION**

Plaintiff Luigi Buitrago ("Mr. Buitrago") brings this action against the District of Columbia (the "District") and Muriel Bowser, Mayor of the District of Columbia ("Mayor Bowser") alleging discrimination on the basis of national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*; discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.*; retaliation in violation of Title VII and the ADA; and breach of contract. Pending before the Court is the District's Motion to Dismiss. Upon careful consideration of the motion, the opposition, the reply thereto, the applicable law, and the entire record herein, the Court **GRANTS IN PART** and **DENIES IN PART** the District's Motion to Dismiss.

## I.    Background

### A. Factual Background

The following facts are alleged in the Third Amended Complaint and the documents incorporated by reference therein, which the Court assumes are true for the purposes of deciding this motion and construes in Mr. Buitrago's favor. *See Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)("[W]e must treat the complaint's factual allegations as true.").

Mr. Buitrago began working for the District of Columbia's Department of Health ("DOH"), a subdivision of the District of Columbia, in October 2005 as a Public Health Analyst. Third Am. Compl., ECF No. 29 at 2 ¶ 13.[1] He states that he is a "Hispanic male of Panamanian origin." Third Am. Compl., ECF No. 29 at 2 ¶ 12.

On July 25, 2006, Mr. Buitrago suffered an on-the-job injury, resulting in a diagnosis of a bulged disk and strained back. *Id.* at 2 ¶¶ 17, 24. Mr. Buitrago alleges that this injury continues to impact his everyday life, including a loss of mobility in his left leg, resulting in reliance on a wheelchair

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

and/or a cane, frequent falls when attempting to move, an
inability to lift anything heavier than ten pounds, inability to
run resulting in weight gain, excessive and chronic pain if he
is unable to receive physical therapy treatments, and side
effects from pain medication. *Id.* at 2-3 ¶ 25, 24. Mr.
Buitrago's injury required multiple surgeries, and following a
surgery in September 2008, he was placed on disability for an
entire year. *Id.* at 3 ¶ 30.

Mr. Buitrago was laid off in January 2012 while receiving
workers' compensation benefits due to a reduction in force, and
later filed a charge of discrimination on basis of disability
and national origin with the Equal Employment Opportunity
Commission ("EEOC") in or around November 2012 ("2012 EEOC
Charge"). *Id.* at 3 ¶¶ 32-33. The 2012 EEOC Charge was resolved
through a confidential January 2013 Settlement Agreement between
DOH, the American Federation of Government Employees, Local 2978
(local union representing Mr. Buitrago), and Mr. Buitrago ("2013
Settlement Agreement"). Pl.'s Ex., ECF No. 1-1. In return for
Mr. Buitrago withdrawing his 2012 EEOC Charge, the 2013
Settlement Agreement required that Mr. Buitrago (1) be
reinstated to a "Grade 12, Step 10 term position within the
Community Health Administration [("CHA")];" (2) be paid "thirty
thousand dollars"; (3) have his leave restored; (4) be provided
with the "ergonomic workstation that was in place for his use"

prior to his dismissal and that "meets the requirements set by Mr. Buitrago's physician"; and (5) be provided with a "flexible work schedule that adhere[d] to the existing DC/DOH policies to facilitate medical treatment or physical therapy related to [Mr. Buitrago's 2006] on-the-job injury." *Id*. at 2 ¶ 3. The Settlement Agreement also provided for the payment of certain attorney's fees. *Id*.

Upon his return to work in February 2013, Mr. Buitrago was placed under a new supervisor who was an African-American female, as were all of his co-workers. Third Am. Compl., ECF No. 29 at 3 ¶ 38. Mr. Buitrago alleges that his new supervisor was informed of the 2013 Settlement Agreement and that she violated the agreement by "by not reasonably accommodating a flexible work schedule for [him] so he could attend physical therapy appointments." *Id*. at 3 ¶¶ 39, 40. Mr. Buitrago alleges his supervisor did provide a flexible work schedule to his co-worker, who also had a reasonable accommodation. *Id*. at 4 ¶ 42. He also alleges that the District failed to provide him with a "reasonable accommodation in the form of an ergonomic workstation . . . over a period of four and a half years." *Id*. at 7 ¶ 93.

On June 5, 2015, Mr. Buitrago filed a second Charge of Discrimination with the EEOC ("2015 EEOC Charge"). In that charge, he alleged discrimination based on sex, national origin,

retaliation and disability. Def.'s Ex. 1, ECF No. 19-2 at 1. He
stated that the discrimination began on November 13, 2014, that
the latest act occurred on June 8, 2015, and was continuing in
nature. *Id.* He referred to the settlement of his previous EEO
claim and alleged, among other things, that his supervisor was
not reasonably accommodating his flexible work schedule and
physical therapy appointments. *Id.*

Subsequent to filing the 2015 EEOC Charge, in October 2015,
Mr. Buitrago informed the Deputy Director for Programs at CHA
that "his ADA accommodations had been requested but not
fulfilled as required by the [2013 Settlement Agreement]." Third
Am. Compl., ECF No. 29 at 4 ¶ 50. After being told that there
was no record of him ever filing the paperwork, he "filed the
requisite paperwork" and then met with a Human Resources officer
who noted that his ADA request for "protected leave and flex
schedule" should be approved per the terms of the 2013
Settlement Agreement. *Id.* at 4 ¶¶ 50-55. Mr. Buitrago alleges
that at some point in January 2016, he was granted leave for his
medical appointments, and his flexible schedule was approved.
*Id.* at 5 ¶ 58. However, on January 28, 2016, Mr. Buitrago
received an email informing him that "his physical therapy
sessions were no longer paid for without [providing an]
explanation," and on January 29, 2016, he was "instructed to use
his personal leave, not administrative leave, for his physical

therapy." *Id.* at 5 ¶¶ 59, 61. On February 10, 2016, Mr. Buitrago
met with the "Associate Director of Policy and Compliance in the
[District of Columbia Human Resource Department ("DCHR")] as the
EEO[] officer for DCHR," and reported the issues he was having
with his superiors. *Id.* at 5 ¶ 63. Mr. Buitrago was then
temporarily assigned to a different division, and the District
hired a consultant to perform his duties at his prior division.
*Id.* at 5 ¶ 65. Mr. Buitrago was then returned to his prior
division because the agency was planning a Reduction in Force
("RIF"). *Id.* After an investigation, DCHR provided Mr. Buitrago
with an Exit Letter closing the matter and informing him that he
had the right to submit a formal complaint to the Office of
Human Resources ("OHR") within fifteen days. *Id.* at 5 ¶ 68; DCHR
Exit Letter and Notice of Right to File a Formal Complaint,
Pl.'s Ex., ECF No. 1-1 at 9-10.

In October 2016, a union representative informed Mr.
Buitrago that his employment was "term" rather than "career."
Third Am. Compl., ECF No. 29 at 5 ¶ 69. Mr. Buitrago alleges
that the 2013 Settlement Agreement states that he was to be
returned to a career position. *Id.* at 5 ¶ 72. After finding out
that he was a "term" employee, instead of a "career" employee,
Mr. Buitrago had to re-apply for his job. *Id.* at 6 ¶ 73. On May
19, 2017, Mr. Buitrago was sent a termination letter stating
that the District would not renew his "Term Appointment," and he

was placed on "administrative leave until his termination became effective September 30, 2017." *Id*. at 6 ¶¶ 74,76.

On November 7, 2017, the EEOC issued a notice of right to file suit based on his 2015 EEOC Charge. EEOC Dismissal and Notice of Rights Letter, Pl.'s Ex., ECF No. 1-1 at 12 ("EEOC Notice").

### B. Procedural History

Mr. Buitrago timely filed his original Complaint on February 5, 2018. *See* Compl., ECF No. 1. The District filed a Notice indicating insufficient service under Federal Rule of Civil Procedure 4(j) on June 27, 2018. *See* Notice, ECF No. 8. On July 12, 2018, Mr. Buitrago filed an Amended Complaint. *See* Am. Compl., ECF No. 11. The District moved to dismiss the Amended Complaint on July 31, 2018. *See generally* Def.'s Mot. to Dismiss, ECF No. 12. On August 21, 2018, Mr. Buitrago filed both his First Memorandum in Opposition to Defendant's Motion, *see* Pl's Opp., ECF No. 15, and a Motion to correct his Amended Complaint. See Pl's Mot. to Am., ECF No. 14.

With the Court's leave, *see* Min. Order of Sept. 5, 2018, Mr. Buitrago filed a Second Amended Complaint on that same day. *See* Second Am. Compl., ECF No. 17. The District filed its Second Motion to Dismiss on October 1, 2018. *See* Second Def.'s Mot. to Dismiss, ECF No. 19. On October 31, 2018, Mr. Buitrago then filed his Second Memorandum in Opposition, *see* Pl.'s Opp. 2, ECF

No. 22, to which the District filed its Reply on November 7, 2018. *See* Def.'s Reply, ECF No. 23. On February 7, 2019, Mr. Buitrago's attorney informed the Court that he had been indefinitely suspended from the practice of law and that Mr. Buitrago had attained new counsel. *See* Notice of Withdrawal as Pl.'s Counsel and Notice of Appearance of New Counsel, ECF No. 24. On May 23, 2019, the Court denied as moot the District's October 1, 2018 Second Motion to Dismiss and allowed Mr. Buitrago to file an amended compliant to address the deficiencies identified by the District. *See* Min. Order of May 23, 2019. Mr. Buitrago filed his Third Amended Complaint on June 24, 2019, *see* Third Am. Compl., ECF No. 29, and the District filed its Motion to Dismiss that Complaint on July 8, 2019. *See* Def.'s Mot. to Dismiss, ECF No. 30. Mr. Buitrago filed his Memorandum in Opposition on July 29, 2019, *see* Pl.'s Opp'n., ECF No. 32, and the District filed its Reply on August 12, 2019. *See* Def.'s Reply, ECF No. 33. The District's motion is ripe and ready for adjudication.

## II.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).

A complaint survives a Rule 12(b)(6) motion only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**III. Analysis**

In its motion to dismiss, the District argues that: (1) "Mayor Bowser is not a proper party to this matter";[2] (2) Mr.

---

[2] Mr. Buitrago concedes to "removing Mayor Bowser from the instant matter . . . ." Pl.'s Opp'n. 3, ECF No. 32 at 2. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss as to the removal of Mayor Bowser as a defendant in this action.

Buitrago "has not properly alleged an adverse employment action"; (3) Mr. Buitrago's "failure to accommodate claim fails because: (i) he has not alleged a disability within the meaning of the ADA, and (ii) he failed to exhaust his administrative remedies for any such claim"; (4) Mr. Buitrago "has not alleged a causal nexus between any protected activity and any allegedly retaliatory act" to support a retaliation claim; and (5) Mr. Buitrago's "breach of contract claim fails because: [i] it is untimely; [ii] he cannot prove a breach; and [iii] any such claim is barred by the D.C. Comprehensive Merit Personnel Act ("CMPA")" *See* Def.'s Mot. to Dismiss, ECF No. 30 at 1.

Mr. Buitrago, in his response, argues that: (1) he sufficiently alleged national origin discrimination by alleging that: "[i] he [was] the only individual of Panamanian origin in his department [and] [ii] [he] was treated differently from his female African-American colleagues due to his national origin because he was prohibited from taking a flexible work schedule," Pl.'s Opp'n., ECF No. 32 at 4; (2) he properly pled an adverse employment action because he was terminated, *id*. at 5; (3) he sufficiently alleged a disability because his back injury interfered with the ability to work, *id*. at 6; and (4) his retaliation claim is timely because the retaliatory acts were continuous in nature and the statutory window was not tolled until he fully and unequivocally realized he was experiencing

retaliatory acts, *id.* at 7.

### A. Mr. Buitrago has stated a claim for employment discrimination on the basis of national origin.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, Mr. Buitrago must allege "two essential elements: (i)[he] suffered an adverse employment action (ii) because of [his] race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "To prevail on a motion to dismiss, it is not necessary to establish a *prima facie* case." *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015)). Nonetheless, Mr. Buitrago "must allege facts that, if true, would establish the elements of each claim." *Id.* (citation and internal quotation marks omitted).

The District argues that the denial of Mr. Buitrago's request for a flexible work schedule does not amount to an adverse employment action because "he has not alleged that his work schedule, under which his workday ended at 6:00 PM, tangibly or immediately affected the terms or conditions of his

employment." Def.'s Mot. to Dismiss, ECF No. 30 at 15. Mr.
Buitrago argues that he has adequately alleged an adverse
employment action because his employment was terminated. Pl.'s
Opp'n, ECF No. 32 at 5. The District responds that: (1) Mr.
Buitrago does not claim that these acts occurred because of his
national origin; and (2) he has not exhausted his administrative
remedies for his termination. Reply, ECF No. 33 at 3.

The Court will first consider whether Mr. Buitrago has
adequately alleged an adverse employment action as a result of
the denial of his request for a flexible work schedule. Although
Mr. Buitrago does not specifically respond to this argument in
his opposition brief, the Court will consider whether he has
adequately alleged such a claim in his Third Amended Complaint.
*See Washington All. of Tech. Workers v. United States Dep't of
Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018) ("a party may
rest on its complaint in the face of a motion to dismiss if the
complaint itself adequately states a plausible claim for
relief.").

To state a viable Title VII claim, the plaintiff must
allege that he suffered an adverse employment action. *Douglas v.
Donovan*, 559 F.3d 549, 551-52 (D.C. Cir. 2009). "An adverse
employment action is a significant change in employment status,
such as hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing

significant change in benefits." *Id. at* 552. "For employment actions that do not obviously result in a significant change in employment status . . . an employee must go the further step of demonstrating how the decision nonetheless caused such an objectively tangible harm." *Id.* at 553.

The Court is persuaded that Mr. Buitrago has sufficiently alleged an adverse employment action because, giving Mr. Buitrago the benefit of all inferences that can be derived from the alleged facts, *see Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), he has alleged that the District violated the 2013 Settlement Agreement by denying his request for a flexible work schedule. Third Am. Compl., ECF No. 29 at 3 ¶ 40. In the 2013 Settlement Agreement, Mr. Buitrago agreed to withdraw his 2012 EEOC Charge in exchange for DOH agreeing to take a number of actions including: (1) reinstatement to a "Grade 12, Step 10 term position within" CHA; (2) payment of $30,000; (3) leave restoration; (4) payment of attorney's fees, (5) being provided with the "ergonomic workstation that was in place for his use" prior to his dismissal and that "meets the requirements set by Mr. Buitrago's physician"; and (6) being provided with a "flexible work schedule that adhere[d] to the existing DC/DOH policies to facilitate medical treatment or physical therapy related to [Mr. Buitrago's 2006] on-the-job injury." Pl.'s Exhibit, ECF No. 1-1 at 2 ¶ 3. Even if the

District's violation of the 2013 Settlement Agreement does not "obviously result in a significant change in employment status," it certainly caused "an objectively tangible harm" because "the alleged harm is not unduly speculative" and is not "difficult to remedy." *Douglas*, 559 F.3d at 553. There is nothing speculative about the alleged harm—it is DOH's violation of one of the terms of the 2013 Settlement Agreement. And the remedy is not difficult—it would have been to provide him with the flexible work schedule. The District's argument, as well as the cases upon with the District relies, therefore miss the point. Accordingly, Mr. Buitrago's allegations are sufficient to withstand the District's motion to dismiss because they "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Next, the Court addresses Mr. Buitrago's argument that he has adequately alleged an adverse employment action because his employment was terminated. Pl.'s Opp'n, ECF No. 32 at 5. The District responds to this argument as follows: (1) Mr. Buitrago does not claim that he was terminated because of his national origin; and (2) he has not exhausted his administrative remedies for his claim of discrimination based on termination. Def.'s Reply, ECF No. 33 at 3.

The Court disagrees with the District that Mr. Buitrago does not claim that he was terminated because of his national

origin because he specifically alleges that his discharge was due to national origin discrimination. Third Am. Compl., ECF No. 29 at 6 ¶ 78. The Court agrees, however, that Mr. Buitrago has not exhausted his administrative remedies with regard to his termination.

Before commencing an action based on Title VII in federal court, a plaintiff must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC. *See Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010). The lawsuit following the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996). Specifically, a plaintiff's claims "must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (citing *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).[3]

Here, the EEOC charge, dated June 9, 2015, does not mention Mr. Buitrago's termination as he was not terminated until September 30, 2017. Mr. Buitrago has not alleged that he amended his 2015 charge to include his termination nor that he filed a

---

[3] The Court applies this test for the reasons explained *supra* at 29-31.

subsequent charge after learning in May 2017 that he would be terminated effective September 30, 2017. Attached to Mr. Buitrago's original Complaint is a letter from the EEOC dated October 11, 2017, in which it gave Mr. Buitrago the opportunity to provide additional information relevant to his allegations, but he has not alleged that he provided information to the EEOC regarding his termination. Pl.'s Ex., ECF No. 1-1 at 11. Since the "administrative investigation that can reasonably be expected to follow the charge of discrimination," *Park*, 71 F.3d at 907, could not have included an investigation of his termination, he has not exhausted his administrative remedies as to an allegation that he was terminated because of his national origin.

Because Mr. Buitrago has adequately alleged an adverse employment action based on the violation of the 2013 Settlement Agreement, the Court **DENIES** the District's Motion to Dismiss as to Mr. Buitrago's discrimination claim based on national origin (Count I).

> **B. Mr. Buitrago has sufficiently alleged a disability within the meaning of the ADA and he has exhausted his administrative remedies on his failure to accommodate claim.**
>
> **1. Mr. Buitrago has sufficiently alleged a disability within the meaning of the ADA.**

The District argues that Mr. Buitrago has not alleged a disability within the meaning of the ADA because: (1) "being

16

dependent on a walking cane, in itself, does not render a person disabled under the ADA"; (2) to the extent his injuries have limited his mobility, he has not "show[n] a substantial limitation in the major life activity of walking"; and (3) "allegations of back pain, without more, are also insufficient to plead a disability within the meaning of the ADA. Def.'s Mot. to Dismiss, ECF No. 30 at 17. Mr. Buitrago argues that he "has . . . alleged a disability because he states that his back injury interfered with the ability to work, and the ADA explicitly defines work as a major life activity." *See* Pl.'s Opp'n, ECF No. 32 at 6. The District responds that Mr. Buitrago's "conclusory allegations regarding his back pain "are not entitled to credence at this stage" because he has not "plead *specific facts* that, if true, would show that his back injury substantially limits him in one or more major life activities." Def.'s Reply, ECF No. 33 at 3.

The ADA prohibits covered employers "from discriminating against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment." *See Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 1201 (2019) (citing 42 U.S.C. § 12112(a)) (internal quotation marks and citations omitted). To state a failure-to-accommodate claim, a plaintiff must "allege facts sufficient to show that (1) he had a disability within the

17

meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused to make such accommodation." *Hodges v. D.C.,* 959 F. Supp. 2d 148, 153–54 (D.D.C. 2013). The District contests only whether Mr. Buitrago has alleged a disability within the meaning of the ADA.

A disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include . . . working." *Id.* § 12102(2)(A). The statute is clear that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). Moreover, EEOC regulations provide that "[t]he question of whether an individual meets the definition of disability under this part should not demand exhaustive analysis." 29 CFR 1630.1(c)(4).[4]

To survive a motion to dismiss on the grounds that he has failed to sufficiently allege a disability, Mr. Buitrago must allege that he "(1) suffers from an impairment, (2) the

_____

[4] "In enacting the [the ADA Amendments Act of 2008], Congress expressly delegated authority to the EEOC to issue regulations implementing the definition of disability under the ADA." *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 309 n.9 (D.D.C. 2015).

impairment limits an activity that constitutes a major life activity, and (3) the limitation is substantial.*" Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015). EEOC regulations define an "impairment" as "[a]ny physiological disorder or condition . . . such as . . . musculoskeletal." 29 C.F.R. § 1630.2(h)(1). The regulations also state that the term "substantially limits shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard," *Id.* § 1630.2(j)(1)(I). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." *Id.* § 1630.2(j)(1)(ii).

Mr. Buitrago alleges that the 2008 injury has caused excessive and chronic pain if he is unable to receive physical therapy treatments. Third Am. Compl., ECF No. 29 at 2-3 ¶ 25, 24. He further alleges that his back injury substantially limits his major life activity of working. *Id.* at 7 ¶ 90. In support, he alleges that he needs to attend two chiropractor appointments and up to three other related appointments per week. *Id.* at 4, ¶

55. In view of the congressional command to "construe[ disability] in favor of broad coverage of individuals," 42 U.S.C. § 12102(4)(A), the Court is persuaded that Mr. Buitrago plead enough factual matter, accepted as true, to state a plausible claim that he has a disability within the meaning of the ADA. *Iqbal*, 556 U.S. at 678. Specifically, he has alleged that he has a musculoskeletal disorder that limits his ability to work because he needs to leave work to attend up to five medical appointments each week. Because most people in the general population do not need to attend five medical appointments per week each week of the year, these allegations are sufficient to allege a disability. *Cf. Badwal*, 139 F. Supp. 3d at 310 (noting that "[a] member of the general population typically does not find eating difficult and is typically able to dress by themselves. For plaintiff this is, at least occasionally, not the case."). Furthermore, the statute does not require that the impairment "prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

The case cited by the District relevant to whether Mr. Buitrago's impairment substantially limits his ability to work, *Nurridin v. Bolden*, 818 F.3d 751, 756 n.4 (D.C. Cir. 2016), is distinguishable because the ADA Amendments Act of 2008, which

broadened the definition of disability, *see* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), were not retroactive and accordingly did not affect that case.

### 2. Mr. Buitrago exhausted his administrative remedies on his failure to accommodate claim.

The District argues that Mr. Buitrago did not exhaust his administrative remedies on his failure to accommodate claim because Count II of his Third Amended Complaint mentions only the denial his request for an ergonomic workstation, and the 2015 EEOC Charge did not include a reference to the ergonomic workstation. *See* Def.'s Mot. to Dismiss, ECF No. 30 at 18. The District contends that the "allegations that [Mr. Buitrago] was denied an ergonomic workstation as an accommodation for his disability is neither like nor reasonably related to the allegations in the [2015 EEOC Charge] . . . . [and] [a]n investigation of allegations in [the 2015 EEOC Charge] would not have reached the decision about whether to give [Mr. Buitrago] an ergonomic workstation." Def.'s Motion to Dismiss, ECF No. 30 at 18-19 (citing *Jouanny v. Embassy of France in United States*, 280 F. Supp. 3d 3, 7 (D.D.C. 2017)). Mr. Buitrago does not reply to this argument. *See generally* Pl.'s Opp'n, ECF No. 31; *see also* Def.'s Reply, ECF No. 33 at 4. But "[b]ecause the failure to exhaust administrative remedies is an affirmative defense, the defendant, rather than the plaintiff, 'bears the burden

of pleading and proving it.'" *Poole v. United States Government Printing Office*, 258 F. Supp. 3d 193, 199 (D.D.C. 2017) (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Before filing a lawsuit under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).[5] As explained above, the lawsuit following the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907. As recently explained by Judge Mehta:

> At a minimum, the claim must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination. And, although the exhaustion requirement is not meant to place a heavy technical burden on an employee, the requirement of some specificity in the charge is not a mere technicality. In short, a vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace.

---

[5] The ADA does not include its own statute of limitations, but adopts the procedures set forth in Title VII. 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter.").

*Jouanny*, 280 F. Supp. 3d at 6-7 (internal quotation marks, brackets, and citation omitted).[6]

The Court is persuaded that the denial of Mr. Buitrago's request for an ergonomic work station is "reasonably related to the allegations of the [2015 EEOC Charge]." *Park*, 71 F.3d at 907. The District accurately points out that the 2015 EEOC charge does not specifically mention the denial of his request for an ergonomic workstation. However, the District does not acknowledge that the charge states that Mr. Buitrago "was placed in his current position as a result of a settlement of [his] previous EEO claim." ECF No. 19-2 at 1. In the settlement of that claim, DOH agreed to "[p]rovide Mr. Buitrago with the ergonomic workstation that was in place for his use . . . and meets the requirements set by [his] physician." Pl.'s Ex., ECF No. 1-1 at 2 ¶ 3(e). Accordingly, it would have been reasonable for the administrative investigation of his charge to have included an inquiry into his employer's compliance with the terms of the 2013 Settlement Agreement. *See Park*, 71 F.3d at 907. Mr. Buitrago's charge is therefore distinguishable from that of the plaintiff in *Jouanny*, where the Court found that she had not exhausted her administrative remedies for a claim of

---

[6] The Court applies this test for the reasons explained *supra* at 29-31.

retaliation because she did not check the box for "retaliation," did not describe any actions that could be considered retaliatory, and provided the date of her termination as the latest date of discrimination, concluding that she "offer[ed] not even a hint that Plaintiff intended to raise a claim of retaliation." 280 F. Supp. 3d at 7.

Because Mr. Buitrago adequately alleged a disability within the meaning of the ADA and because he exhausted his administrative remedies on this claim, the Court **DENIES** the District's Motion to Dismiss as to Mr. Buitrago's failure to accommodate claim (Count II).

### C. Mr. Buitrago has plead plausible allegations of retaliation in violation of Title VII and the ADA.

The District argues that the three-year gap between Mr. Buitrago's 2012 EECO Charge and, what it deems the "earliest of the allegedly retaliatory acts"—his 2016 transfer to a different position—is insufficient to support an inference of a causal connection necessary to state a claim for retaliation. Def.'s Mot. to Dismiss, ECF No. 30 at 20 (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012)). Mr. Buitrago does not respond to the District's argument, arguing instead that his retaliation claim is timely because he filed this action within 90 days of his Right to Sue letter. *See* Pl.'s Opp'n, ECF No. 32 at 7. The District responds that it did not challenge the

timeliness of Mr. Buitrago's retaliation claim, but instead argues that Mr. Buitrago has not "alleged a causal connection between his November 2012 EEOC charge and allegedly retaliatory acts occurring *at least three years later*. Def.'s Reply, ECF No. 33 at 4. The District also argues that Mr. Buitrago cannot amend his complaint in his opposition brief to include his 2015 EEOC Charge and that even if allegations from the 2015 EEOC Charge are reviewed, they should be rejected because he has not exhausted the administrative process for his retaliation claims. Def.'s Reply, ECF No. 33 at 4.

"To make out a *prima facie* case of retaliation, a plaintiff must show that '(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'" *Hamilton*, 666 F.3d at 1357 (quoting *Woodruff v. Peters,* 482 F.3d 521, 529 (D.C. Cir. 2007))."[U]nder some circumstances, temporal proximity between an employer's knowledge of protected activity and an adverse personnel action may alone be sufficient to raise an inference of causation." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015). However, Mr. Buitrago "need not plead each element of his *prima facie* retaliation case to survive a motion to dismiss." *Jackson v. Dist. Hosp. Partners*, L.P., No. CV 18-1978 (ABJ), 2019 WL 3502389, at *5 (D.D.C. Aug. 1, 2019).

As an initial matter, the Court rejects the District's argument that Mr. Buitrago seeks to amend his complaint with his opposition briefing. Although the District is correct that the 2015 EEOC charge is not referenced in five of the paragraphs supporting Mr. Buitrago's retaliation claims, he does provide factual allegations regarding the 2015 EEOC Charge elsewhere in his Third Amended Complaint, and he has incorporated those allegations in his retaliation claim. *See* Third Am. Compl., ECF No. 29 at 7 ¶¶ 95-100. At the motion to dismiss stage, the Court must construe the operative complaint liberally in Mr. Buitrago's favor, view the factual allegations therein as a whole, accept them as true, and grant him the benefit of all inferences that can be derived from the alleged facts. *See Kowal*, 16 F.3d at 1276.

Bearing in mind that neither the Supreme Court nor the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has established a bright-line rule expressing the exact length of time sufficient to demonstrate retaliation, *See Hamilton*, 666 F.3d at 1358, and that Mr. Buitrago does not need to establish each element of his *prima facie* case at the motion to dismiss stage, the Court is persuaded that his allegations are sufficient to state a claim for retaliation.

To support his claim of retaliation under Title VII and the ADA, Mr. Buitrago alleges the following in Count III: (1) he

filed a disability and national origin discrimination claim in November 2012; (2) he was retaliated against when DOH (i) "was required to return staffers to their previous positions, but failed to allow [him] to do so" resulting in him being "effectively cut off from the opportunity to complete substantive work assignments," and (ii) being forced to apply for his previous position; (3) subjected to administrative leave prior to his termination on September 30, 2017; and (4) he was retaliated against when DOH withdrew authorization for medical treatment. Third Am. Compl., ECF No. 29 at 7 ¶¶ 96-99. Count III of the Third Amended Complaint incorporates by reference all preceding paragraphs. *Id*. at 7 ¶ 95. The following allegations elsewhere in the Third Amended Complaint are also relevant to Mr. Buitrago's retaliation claim: (1) In June 2015, Mr. Buitrago filed a second charge of discrimination alleging retaliation, *id*. at 4 ¶ 48; (2) in or around January 28, 2016, he was informed that DOH would no longer pay for his physical therapy sessions, *id*. at 5 ¶ 59; (3) between February and June 2016, Mr. Buitrago was reassigned to a different division at DOH, *id*. at 5 ¶ 65; (4) at some point thereafter, Mr. Buitrago was returned to his former position, but was not allowed to resume his former duties, *id.* at 5 ¶ 67; (5) at some point thereafter, Mr. Buitrago was forced to reapply and compete for his job, *id*. at 6 ¶ 73; (6) On May 19, 2017, Mr. Buitrago was sent a termination

letter, *id*. at 6 ¶ 74; (7) Mr. Buitrago was placed on administrative leave until the September 30, 2017 effective date of his termination, *id*. at 6 ¶ 76. In sum, Mr. Buitrago alleges that beginning approximately seven months after filing his charge with the EEOC and while that charge was being investigated, he was subjected to the adverse actions described. He has therefore alleged a temporal proximity that is sufficient to withstand the District's Motion to Dismiss as the allegations "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Next, the District argues that Mr. Buitrago failed to exhaust the administrative process in regard to his retaliation claims because "[w]hile the D.C. Circuit has not definitively spoken on this issue, 'most judges in this district have held that plaintiffs alleging discrete acts of discrimination or retaliation must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.'" Def.'s Reply, ECF No. 33 at 5 (quoting *Rashad v. Wash. Metropolitan Area Transit Auth*., 945 F. Supp. 2d 152, 166 (D.D.C. 2013)).

As explained above, before filing a lawsuit under Title VII and the ADA, a plaintiff must exhaust his administrative remedies, 42 U.S.C. § 2000e-5(e)(1); and, the lawsuit following

the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907.

The D.C. Circuit has not yet decided whether the "like or reasonably related" test was overtaken by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). In *Morgan*, the question facing the Court was whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the] statutory time period" because they occurred more than 180 or 300 days *before* the plaintiff filed a charge with the EEOC. 536 U.S. at 105–06. The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges challenging that act." *Id.* at 113. Although the D.C. Circuit has not spoken to this issue, "[t]he majority of [district judges in this Circuit to have done] so have interpreted *Morgan* to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, regardless of any relationship that exists between those discrete claims and any others," reasoning that "requiring exhaustion of each discrete claim most faithfully reflects *Morgan* and the purpose of the exhaustion doctrine, namely to

give the agency notice of a claim and the opportunity to handle it internally so that only claims plaintiff has diligently pursued will survive." *Poole*, 258 F. Supp. 3d at 201 (internal quotation marks and citations omitted). The two cases cited by the District—*Rashad*, 945 F. Supp. 2d 166, and *Klotzbach-Piper v. Nat'l Railroad Passenger Corp.*, 373 F. Supp. 3d 174, 186 (D.D.C. 2019)—adopted this view. "A minority however, have continued to recognize an exception to the administrative-exhaustion requirement where unexhausted discrimination and retaliation claims satisfy the like or reasonably related test" reasoning that "the exhaustion doctrine was not intended to become a massive procedural roadblock to access to the courts' and 'where the ends of administrative exhaustion have been served by the pursuit of administrative remedies with regard to the subsequent acts, separate initiation of administrative exhaustion for post complaint conduct is not required." *Poole*, 258 F. Supp. 3d at 202-203 (internal quotation marks and citations omitted). The Court is persuaded that the "like or reasonably related" test properly applies here, where Mr. Buitrago seeks to bring retaliation claims for discrete acts that occurred *after* he filed his 2015 EEOC Charge.

Applying that test, the Court is persuaded that Mr. Buitrago can proceed on his claim that he was retaliated against based on the following discrete acts because they are like or

reasonably related to his 2015 EEOC Charge: (1) in or around January 28, 2016, he was informed that DOH would no longer pay for his physical therapy sessions, *id.* at 5 ¶ 59; (2) between February and June 2016, Mr. Buitrago was reassigned to a different division at DOH, *id.* at 5 ¶ 65; (3) at some point thereafter, Mr. Buitrago was returned to his former position, but was not allowed to resume his former duties, *id.* at 5 ¶ 67; and (4) at some point thereafter, Mr. Buitrago was forced to reapply and compete for his job, *id.* at 6 ¶ 73. Given that Mr. Buitrago raised issues regarding his physical therapy sessions and that he alleged retaliation that was continuing in nature, Pl.'s Ex. 19-2 at 1, these allegations are "like or reasonably related" to the 2015 EEOC Charge. However, Mr. Buitrago may not proceed on his retaliation claim based on his termination and being placed on administrative leave until the effective date of his termination. As the Court stated above, since the "administrative investigation that can reasonably be expected to follow the charge of discrimination," *Park*, 71 F.3d at 907, could not have included an investigation of his termination, he has not exhausted his administrative remedies as to his allegation that he was terminated in retaliation for engaging in protected activity.

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** the District's Motion to Dismiss as to Mr. Buitrago's retaliation claim (Count III).

### D. **Mr. Buitrago's breach of contract claims related to the 2013 Settlement Agreement are timed barred.**

Mr. Buitrago alleges that the District breached the terms of the 2013 Settlement Agreement for three reasons: (1) failure to provide him with a flexible work schedule; (2) failure to provide him "with an ergonomic workstation in the four and a half years prior to [his] termination"; and (3) disclosing the details of the settlement agreement. Third Am. Compl., ECF No. 29 at 3 ¶ 40, 8 ¶¶ 105, 106. The District argues that: (1) Mr. Buitrago's claim regarding the ergonomic workstation is untimely; and (2) any breach caused by the District's disclosure is "a non-starter" because Mr. Buitrago disclosed the agreement when he attached it to his complaint in this case. Def.'s Mot. to Dismiss, ECF No. 30 at 21. Although Mr. Buitrago does not specifically respond to these arguments in his opposition brief, the Court will consider whether he has adequately alleged a breach of contract claim in his Third Amended Complaint. *See Washington All. of Tech. Workers*, 892 F.3d at 345.

Under District of Columbia law, a contract action must be brought within three years of the date on which the "right to

maintain the action accrues." *Wright v. Howard Univ.*, 60 A.3d 749, 751 (D.C. 2013)(citing D.C. Code § 12-301(7)). An action for breach of contract generally accrues at the time of the breach. *Id.*

Here, Mr. Buitrago entered into the 2013 Settlement Agreement on January 25, 2013. Pl.'s Ex., ECF No. 1-1 at 5.  In that agreement, his employer agreed to, among other things, provide Mr. Buitrago with: (1) an ergonomic workstation; and (2) a "flexible work schedule" that would allow him to facilitate medical treatment due to his injury. Pl.'s Ex. 1-1 at 2 ¶ 3(e), (f). Mr. Buitrago alleges that, upon his return to work in February 2013, his new supervisor "violated the terms of the [2013 Settlement Agreement] by not reasonably accommodating a flexible work schedule [that would allow him to] attend physical therapy appointments." Third Am. Compl., ECF No. 29 at 3 ¶ 40. Mr. Buitrago also alleges that he was denied the "ergonomic workstation [which was required by the 2013 Settlement Agreement for] over a period of four and a half years." *Id.* at 7 ¶ 93. As Mr. Buitrago was terminated in September 2017, his allegation that the District failed to comply with these provisions in the 2013 Settlement Agreement for over four years prior to his termination places the earliest breach in 2013.

Mr. Buitrago filed his original complaint with this Court on February 5, 2018, but his breach of contract claim accrued,

and the three-year limitations period began on the day he
returned to work in February 2013 and was not provided his
"flexible work schedule" or "ergonomic workstation." *Wright*, 60
A.3d at 751. Since Mr. Buitrago alleges that the District was in
breach of the 2013 Settlement Agreement as early as February
2013, his claim for breach of contract falls outside the
District's statute of limitations by almost two full years. *See*
*Billups v. Lab. Corp. of Am.*, 233 F. Supp. 3d 20, 24 (D.D.C.
2017) (holding that the plaintiff's breach of contract claim
accrued on date the defendant transferred the plaintiff's right
to earn a portion of his annual sales commissions to other co-
workers, which took place five years before the action was
brought). Accordingly, Mr. Buitrago's breach of contract claim
regarding the ergonomic work station and a flexible work
schedule is time barred.

As to Mr. Buitrago's claim that the District "breached the
terms of the agreement by disclosing details of the settlement
in other litigation related to [him]," in addition to he himself
disclosing the Agreement on the public docket in this case, *see*
Pl.'s Ex., ECF No. 1-1 at 1-5, Mr. Buitrago has alleged no facts
to support this allegation such as when this alleged breach
occurred. *See generally* Third Am. Compl., ECF No. 29.
Accordingly, Mr. Buitrago has failed to "state a claim to relief
that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal

quotation marks and citation omitted). Because the Court has determined that Mr. Buitrago's contract claim is time barred as to his "flexible work schedule" and "ergonomic workstation claims, and fails to state a claim as to his disclosure claim, the Court need not reach the District's argument that his contract claim is barred by the Comprehensive Merit Personnel Act.

Accordingly, the Court **GRANTS** the District's Motion to Dismiss as to Mr. Buitrago's breach of contract claim (Count IV).

**IV. Conclusion**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the District's Motion to Dismiss. The Court **DISMISSES** Mr. Buitrago's claims against Mayor Bowser, his claim for retaliation based on his termination, and breach of contract claim. Mr. Buitrago's remaining claims are (1) discrimination on the basis of national origin based on violation of the 2013 Settlement Agreement; (2) discrimination on the basis of disability under the ADA; and (2) retaliation under Title VII and the ADA as to his claims that (1) DOH would no longer pay for his physical therapy sessions; (2) he was reassigned to a different division at DOH; (3) he was returned to his former position, but was not allowed to resume his former duties; and (4) he was forced to reapply and compete for his job. A separate

Order accompanies this Memorandum Opinion.

       **SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
           **United States District Judge**
           **March 3, 2020**