**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LUIGI BUITRAGO,

               Plaintiff,

v.

DISTRICT OF COLUMBIA,

               Defendant.

No. 18-cv-261(EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Luigi Buitrago ("Mr. Buitrago" or "Plaintiff") initiated this suit against the District of Columbia ("the District" or "Defendant") based on Defendant's response to Mr. Buitrago's disability. *See* Third Am. Compl., ECF No. 29 ¶¶ 17-79. Mr. Buitrago's remaining claims against Defendant are: (1) discrimination on the basis of national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*; (2) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*; and (3) retaliation in violation of Title VII and the ADA. *See* Mem. Op. ("MTD Op."), ECF No. 35 at 35.[1] Pending before the Court is Defendant's Motion for Summary Judgment. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 45 at 1. Upon careful

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

consideration of the motion, the response, the reply thereto, the entire record herein, and the applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.   Background[2]

Mr. Buitrago began working for the District as a Public Health Analyst in the Department of Health in 2005. Def.'s Statement of Undisputed Material Facts ("SOMF"), ECF No. 45-1 ¶ 1. The following year, he was injured on the job, which required several surgeries, disability leave in 2011, and ongoing physical therapy. *Id.* ¶ 2. The District provided Mr. Buitrago with an ergonomic workstation as an accommodation for his injury. *Id.* ¶ 12. He complained that the station did not give him enough workspace and his union later filed a grievance against the District regarding the issue. *Id.* ¶¶ 13, 17. The

---

[2] When responding to a motion for summary judgment, the Federal Rules of Civil Procedure, the Rules of the U.S. District Court for the District of Columbia, and the Standing Order of this Court all require a party to identify which of the opposing party's facts they consider in dispute. *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan, ECF No. 2 at 8-10. Mr. Buitrago fails to address any of the facts the District offers in its Statement of Undisputed Material Facts. Furthermore, Mr. Buitrago only lists four items in his "Statement of Genuine Issues," none of which directly address any of the facts asserted by the District. *See* Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 47 at 1-2. Therefore, as permitted by the Federal Rules of Civil Procedure and this District's Local Rules, the Court considers Defendant's statement of material facts undisputed, *see* Fed. R. Civ. P. 56(e)(2); LCvR (h)(1), and those facts form the basis for this background.

District hired an ergonomist and he concluded that although the workstation could not be altered "to meet [Mr. Buitrago's] specifications," it also "did not present any ergonomic barriers to [Mr. Buitrago] performing his work." *Id.* ¶¶ 14-16.

In 2012, Mr. Buitrago was laid off as part of a reduction in force and he filed an EEOC charge alleging his termination was discrimination based on his disability. *See id.* ¶ 3. In 2013, Mr. Buitrago and the District entered into a settlement agreement which reinstated Mr. Buitrago and provided him backpay, accrued leave, and a continuation of his flexible work schedule to accommodate his physical therapy. *Id.* ¶ 4. Upon returning to work in 2013, Mr. Buitrago again objected to the ergonomic workstation, but in 2015 dropped his request for the accommodation. *See id.* ¶¶ 18-19.

In June 2015, Mr. Buitrago filed another EEOC charge, alleging retaliation and discrimination based on his sex, national origin, and disability. *Id.* ¶ 11. His charge alleged that his supervisor violated the 2013 settlement agreement by not providing him with a flexible work schedule. *Id.* ¶ 5. He alleged that this action was also discrimination based on his national origin because he found out that two of his African-American co-workers were provided flexible work schedules and he was not. *Id.* ¶¶ 7-8. The District claimed that Mr. Buitrago was denied his request for an eight-hour work schedule because the

District policy requires an eight-hour workday with a mandatory thirty-minute, uncompensated lunch period. *Id.* ¶¶ 6, 9-10.

In 2016, Mr. Buitrago claimed that the District stopped paying for his physical therapy appointments. *Id.* ¶ 21. However, the District explained that Mr. Buitrago's "pre-approved physical therapy was authorized and paid for," but his new requests for chiropractic care were not covered, a decision made not by the District but by the third-party worker's compensation carrier. *See id.* ¶¶ 26-27. Mr. Buitrago also claims that he was transferred to a different position within the District, but that the transfer was intended to "find out if there was a better match for [him] and the program in an effort to make [him] more comfortable." *Id.* ¶ 28. Mr. Buitrago believed the change was "retaliatory because it occurred after he submitted an EEOC complaint." *Id.* ¶ 29. Finally, Mr. Buitrago claims that he was not given work by his direct supervisor when he returned to his previous position, but also stated that he "remained in charge of all the programs, assisted co-workers, and received assignments from the division chief." *Id.* ¶ 30.

In 2017, Mr. Buitrago was notified that his temporary appointment was not being renewed and he was terminated later that year. *See* Pl.'s Ex. D, ECF No. 47-4 at 1. Mr. Buitrago's employment in a term position was specified in his 2013 settlement agreement. *See* SOMF, ECF No. 45-1 ¶ 31.

4

Mr. Buitrago initiated this suit in February 2018. *See* Compl., ECF No. 1. After several motions to dismiss and responsive amended complaints, Mr. Buitrago filed his operative Third Amended Complaint in June 2019. Third Am. Compl., ECF No. 29. He alleged four counts: (1) that the District discriminated against him on the basis of his national origin, *id.* ¶¶ 80-87; (2) that the District discriminated against him based on his disability, *id.* ¶¶ 88-94; (3) that the District retaliated against him in several ways including transferring him, forcing him to reapply for his position, preventing him from performing his duties, withdrawing payment for his physical therapy, and ultimately terminating him, *id.* ¶¶ 95-100; and (4) that the District breached the 2013 settlement agreement, *id.* ¶¶ 101-08.

The District filed its Motion to Dismiss the Third Amended Complaint in July 2019. *See* Defs.' Mot. to Dismiss Pl.'s Third Am. Compl., ECF No. 30. In March 2020, this Court granted Defendants' motion for the breach of contract claim and some of the retaliatory acts identified in Mr. Buitrago's claims of retaliation, but let his claims for national origin discrimination, disability discrimination, and retaliation based on four specific adverse actions proceed. *See* MTD Op., ECF No. 35 at 35.

In March 2021, the District filed the current Motion for Summary Judgment. *See* Def.'s Mot., ECF No. 45. Mr. Buitrago

filed his brief in opposition the following month, *see* Pl.'s
Opp'n, ECF No. 47; and Defendant filed its reply, *see* Def.
District of Columbia's Reply in Further Supp. of Its Mot. for
Summ. J., ECF No. 48. The District's motion is now ripe and
ready for adjudication.

## II.  Standard of Review

Federal Rule of Civil Procedure 56 requires the Court to
grant a motion for summary judgment when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a). A
"material" fact is one that could "affect the outcome of the
suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986). And a dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Id.* The moving party bears the burden
of "informing the district court of the basis for its motion" as
well as "identifying those portions of the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, which it believes
demonstrate the absence of a genuine issue of material fact."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal
quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A).

To defeat summary judgment, the nonmoving party must "go
beyond the pleadings" and "designate specific facts showing that

there is a genuine issue [of material fact] for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). In evaluating a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the nonmoving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence" in the record. *Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 164 (D.D.C. 2011); *see also Celotex Corp.*, 477 U.S. at 324. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## III. Analysis

This Court, in its previous opinion on Defendant's Motion to Dismiss, specified that "Mr. Buitrago's remaining claims are (1) discrimination on the basis of national origin . . . ; (2) discrimination on the basis of disability under the ADA; and [(3)] retaliation under Title VII and the ADA as to his claims that [(i)] DOH would no longer pay for his physical therapy sessions; [(ii)] he was reassigned to a different division at DOH; [(iii)] he was returned to his former position, but was not allowed to resume his former duties; and [(iv)] he was forced to reapply and compete for his job." MTD Op., ECF No. 35 at 35.

Defendant argues that its Motion for Summary Judgment should be granted because the "undisputed facts demonstrate that Plaintiff cannot prove actionable claims under these statutes." Def.'s Mot., ECF No. 45 at 1.

### A. Discrimination on the Basis of National Origin

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a)(1). "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "A plaintiff must prove both elements to sustain a discrimination claim." *Id.*

When employees have no direct evidence of discrimination—and instead rely on circumstantial evidence to establish an inference of discrimination—Courts employ the three-step *McDonnell Douglas* burden-shifting framework. *See Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019). Under this "method of proof," (1) "the employee must establish a *prima facie* case"; (2) if they succeed, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions"; and (3) "[i]f the employer meets its burden of

production, the burden then shifts back to the employee, who must prove that, despite the proffered reason, [they have] been the victim of intentional discrimination." *Id.* (internal quotation marks omitted). However, when considering a motion for summary judgment, instead of focusing on a plaintiff's *prima facie* case, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has clarified that "[i]n a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision," "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Figueroa*, 923 F.3d at 1087 (describing the *Brady* question as "a shortcut for the District Court to tackle the critical question of discrimination" (internal quotation marks omitted)).

Mr. Buitrago's claim for national origin discrimination rests on the adverse action of Defendant "denying his request for a flexible work schedule," *see* MTD Op., ECF No. 35 at 13; which he claims raises an inference of discrimination because

9

two African-American co-workers, "who also had a reasonable accommodation," were "provide[d] a flexible work schedule," *see id.* at 4; Pl.'s Opp'n, ECF No. 47 at 4. Defendant challenges this claim on two grounds. First, the District claims that Mr. Buitrago has provided "no admissible evidence that Plaintiff was denied an eight hour flexible work schedule based on his national origin." Def.'s Mot., ECF No. 45 at 11. And second, the District argues that Mr. Buitrago "cannot demonstrate" that the District's proffered legitimate, non-discriminatory reason for the decision—"adherence to the District Personnel Manual"—"is pretext." *Id.* at 13. Mr. Buitrago in opposition argues that his claim should survive summary judgment because "Defendant has not produced sufficient evidence for a reasonable jury to find that their asserted reason was the actual reason, and that subsequently, a dispute of material fact as to a pretextual reason *has* been established," Pl.'s Opp'n, ECF No. 47 at 3; and that "a reasonable jury could find that the evidence submitted demonstrating the disparate treatment between Plaintiff and his two referenced colleagues *are* probative of pretext," citing the Third Amended Complaint, *id.* at 4.

Looking at the evidence on the overall question of discrimination, the Court concludes that Mr. Buitrago has not "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the

actual reason and that the employer intentionally discriminated against [him]." *Brady*, 520 F.3d at 494. Beginning with pretext, Defendant argues that Mr. Buitrago "was not denied an eight-hour flexible work schedule because he is of Panamanian descent" but rather, "because the District Personnel Manual requires an eight-hour work day with a 30 minute break." Def.'s Mot., ECF No. 45 at 13. For evidentiary support, Defendant cites its Statement of Material Facts, which in turn cites the District's Personnel Manual. *See id.*; SOMF, ECF No. 45-1 ¶¶ 9-10; Def.'s Ex. 5, ECF No. 45-7 at 2-3 (explaining that a "basic forty-hour (40-hour) workweek shall be scheduled"); Def.'s Ex. 6, ECF No. 45-8 at 2 (explaining that a 30-minute lunch period "shall be in addition to his or her regularly scheduled duty hours").

Mr. Buitrago does not dispute the validity or relevance of this evidence or offer any of his own to combat Defendant's assertions. Rather, he argues that "the evidence submitted demonstrating the disparate treatment between [him] and his two referenced colleagues *are* probative of pretext." Pl.'s Opp'n, ECF No. 47 at 4. However, in explaining what "evidence" establishes disparate treatment, Mr. Buitrago cites only his Third Amended Complaint. At the summary judgment stage, an unverified complaint is insufficient evidence to survive a motion for summary judgment. *See Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("it is well established that

11

[a plaintiff] cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence"); *id.* at 94 n.5 (observing that a verified complaint "has the same evidentiary value as a plaintiff's affidavit or sworn declaration"); Fed. R. Civ. P. 56(c)(1)(A) (allowing parties in summary judgment proceedings to cite to evidence such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). Thus, Mr. Buitrago has not pointed to any evidence in the record showing a genuine dispute of material fact sufficient to overcome Defendant's arguments.

Furthermore, although there exists evidence in the record substantiating Mr. Buitrago's factual claim from the Third Amended Complaint, that evidence is also insufficient to overcome the present motion because it is not admissible. *See* Fed. R. Civ. P. 56(c)(2). Defendant points out that Mr. Buitrago, in his deposition, stated that two African-American coworkers received eight-hour work schedules. *See* Def.'s Mot., ECF No. 45 at 11; Def.'s Ex. 2, ECF No. 45-4 at 9-10. But he stated that he knew these facts because his co-workers told him. Def.'s Ex. 2, ECF No. 45-4 at 10. He claimed that the information was "discussed in a minute meeting" and he could

12

"ask for the meeting . . . records." *Id.* But Mr. Buitrago neither cites to nor has attached to his briefing any evidence from that meeting. Thus, the record only contains Mr. Buitrago's own statement about what his co-workers told him about their work schedules. As Defendant notes, this statement is hearsay because Mr. Buitrago is relaying an out-of-court statement to establish the truth of the matter asserted—that his co-workers actually received eight-hour work schedules. *See* Fed. R. Evid. 801(c). Mr. Buitrago does not address Defendant's hearsay argument and thus fails to establish that the statement would either be not hearsay or would fall under a hearsay exception. *See* Fed. R. Evid. 801(d). Therefore, because Mr. Buitrago's statement about his co-workers' schedules would be inadmissible in court, the statement is also insufficient to defeat summary judgment. *See Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (affirming grant of summary judgment to a defendant because a plaintiff's "hearsay . . . counts for nothing" on a motion for summary judgment).

Since Mr. Buitrago's sole support for the inference of national origin discrimination comes from inadmissible evidence, the Court cannot conclude that Mr. Buitrago has met his burden of "produc[ing] sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against [him]." *Brady*, 520 F.3d at 494. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on Mr. Buitrago's discrimination claim based on national origin.

### B. Discrimination Based on Disability.

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a); and requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," *id.* § 12112(b)(5)(A). To establish a valid failure-to-accommodate claim, "a plaintiff must establish by a preponderance of the evidence that '(1) she was a qualified individual with a disability, (2) the [employer] had notice of her disability and (3) the [employer] denied her request for a reasonable accommodation.'" *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (quoting *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). An "'employer need only provide some reasonable accommodation,' not the accommodation that the employee requests or prefers." *Carter v. Nelson*, No. 20-5111, 2021 WL 6139250, at *1 (D.C. Cir. Dec. 27, 2021) (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc)).

In the Third Amended Complaint, Mr. Buitrago alleged that the District violated the ADA "when Defendant denied Plaintiff's

request for a reasonable accommodation in the form of an ergonomic workstation." Third Am. Compl., ECF No. 29 ¶ 93. On this Motion for Summary Judgment, the District argues that Mr. Buitrago's failure-to-accommodate claim fails because the "[u]ndisputed facts demonstrate that Plaintiff was provided with a reasonable accommodation, specifically an ergonomic workstation that did not present any ergonomic barriers to Plaintiff performing his work." Def.'s Mot., ECF No. 45 at 14. The District also acknowledges that while Mr. Buitrago previously objected "to the amount of workspace provided" by the workstation, "the ADA does not require employers to provide the accommodation that the employee requests or prefers; it simply requires them to provide some reasonable accommodation." *Id.*

Mr. Buitrago does not mention his failure-to-accommodate claim in his briefing on this motion. He does not discuss or cite to any evidence related to his request for an ergonomic workstation. In his "Statement of Genuine Issues," in which he states four matters which he seems to claim are material and in dispute, Mr. Buitrago only mentions his flexible work schedule and administrative leave for physical therapy, *see* Pl.'s Opp'n, ECF No. 47 at 1; but never argues in the briefing that either issue is the basis for a failure-to-accommodate claim. Therefore, Mr. Buitrago has abandoned his failure-to-accommodate claim by not addressing it in his briefing. *See Al-Gharawy v.*

15

*U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 19 (D.D.C. 2022) (concluding that "Plaintiffs appear to abandon [a] claim" because they did "not mention" it "[i]n their opposition"); *cf. Posters 'N' Things, Ltd. v. U.S.*, 511 U.S. 513, 527 (1994) (concluding that a party "abandons" an issue where "petitioners' brief on the merits fails to address the issue"). Furthermore, because Mr. Buitrago does not dispute the validity or relevance of the District's evidence that it accommodated his request for an ergonomic workstation, Mr. Buitrago has also conceded the argument that a reasonable accommodation was made for his request. *See Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 138 (D.D.C. 2022) ("'If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.'" (quoting *Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002))). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Mr. Buitrago's failure-to-accommodate claim.

### C. Retaliation

Title VII and the ADA prohibit retaliating against employees who file complaints of discrimination. *See* 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a). Under both statutes, an employee must establish that they: (1) "engaged in protected activity," (2) were "subjected to adverse action by the

employer," and (3) that "there existed a causal link between the adverse action and the protected activity." *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (internal quotation marks omitted). Like discrimination claims under Title VII, when an employee does not have direct evidence of causation—and instead intends to rely on circumstantial evidence to establish an inference that the adverse employment action was due to the employee's protected activity—Courts employ the three-step *McDonnell Douglas* burden shifting framework. *See id.* (adopting the Title VII framework for "ADA retaliation suits").

This Court specified, at the end of its opinion regarding Defendant's Motion to Dismiss, that Mr. Buitrago's only remaining claims for retaliation are based on: (1) that DOH would no longer pay for Mr. Buitrago's physical therapy sessions; (2) that Mr. Buitrago was reassigned to a different division at DOH; (3) that Mr. Buitrago was returned to his former position, but was not allowed to resume his former duties; and (4) that Mr. Buitrago was forced to reapply and compete for his job. *See* MTD Op., ECF No. 35 at 35. The District argues that all four claims fail because Mr. Buitrago "cannot prove that any of these acts were taken as a result of his protected EEO activity," Def.'s Mot., ECF No. 45 at 16; and that even if Mr. Buitrago "could prove a prima facie case of retaliation, the District had legitimate, non-retaliatory

17

reasons for the . . . employment actions at issue," *id.* at 19.

In his briefing on the current motion, Mr. Buitrago significantly alters his claims. First, he argues that his protected activity was "when he attempted to communicate with his employer regarding his desired disability accommodations and need for reasonable accommodation for medical treatment." Pl.'s Opp'n, ECF No. 47 at 5. Second, he identifies three adverse actions in connection with this protected activity: (1) that he was "subjected to negative evaluation comments and reprimands from his supervisor"; (2) that he "was not given work assignments by his supervisor, who was angered by [his] actions in contacting the supervisor's superiors in an effort to find substantive work"; and (3) that "he was place[d] on administrative leave in late 2016 and ultimately terminated in May 2017 under the guise of a reduction in force." *Id.* at 5-6. Finally, the only causal connection Mr. Buitrago identifies is the temporal connection to his termination which occurred "*four months after* he was granted permission to file a formal EEOC complaint relating to his attempted protected activity communicating with HR about his concerns." *Id.* at 6.

Turning first to the four retaliation claims which survived Defendant's prior Motion to Dismiss, the Court concludes that Mr. Buitrago either abandoned the claims or failed to point to any evidence in the record showing a genuine dispute of material

fact. On the first issue of payment for physical therapy sessions, Mr. Buitrago seems to abandon his previous argument, *see* MTD Op., ECF No. 35 at 26-28; that the District's refusal to pay was a retaliatory action. On this motion, Mr. Buitrago claims that his request for the District to pay for the physical therapy sessions was itself the protected activity, not the retaliatory effect of protected activity. *See* Pl.'s Opp'n, ECF No. 47 at 5. Mr. Buitrago does not address Defendant's argument that there is no causal connection between the District's failure to pay for Mr. Buitrago's sessions and his protected activity because "[t]here is no evidence that any District employee . . . was aware of [his] EEOC complaints or that anyone at this separate District agency would be motivated to retaliate against [him]." Def.'s Mot., ECF No. 45 at 17. Mr. Buitrago also does not address Defendant's proffered non-discriminatory reason for not paying for his appointments, namely that his "pre-approved physical therapy was authorized and paid for," but his "treatment with unauthorized, other physicians, specifically chiropractic care . . . was not covered." *Id.* at 19. He also does not dispute that this determination was "the third-party worker's compensation carrier's determination, not a retaliatory determination made by [the District]." *Id.* Thus, the Court concludes that Mr. Buitrago has conceded Defendant's arguments by failing to address them in his briefing and abandoned his

claim for retaliation based on the District's failure to pay for his therapy appointments. *See Al-Gharawy*, 617 F. Supp. 3d at 19; *Am. Waterways Operators*, 590 F. Supp. 3d at 138.

The Court reaches the same conclusion for Mr. Buitrago's retaliation claim based on his reassignment to a different division of DOH. Mr. Buitrago does not once mention reassignment in his briefing on this motion. Therefore, he also fails to address Defendant's argument that "nothing in the summary judgment record suggests that [the person who reassigned Mr. Buitrago] was aware of [his] EEOC complaints." Def.'s Mot., ECF No. 45 at 17. Again, Mr. Buitrago concedes this argument and has abandoned his claim by not mentioning either in his briefing. *See Al-Gharawy*, 617 F. Supp. 3d at 19; *Am. Waterways Operators*, 590 F. Supp. 3d at 138.

The Court also reaches the same conclusion for Mr. Buitrago's retaliation claim based on him being forced to reapply and compete for his job. Mr. Buitrago does not mention this action in his briefing on this motion. In his "Statement of Genuine Issues," he claims that he "was not a term employee as he was converted in a 2010 personnel action," citing an attached exhibit. *See* Pl.'s Opp'n, ECF No. 47 at 1; Pl.'s Ex. A, ECF No. 47-1 at 1. However, Mr. Buitrago never mentions, much less argues the significance of, this purported personnel action in his briefing. He does not use it to claim that he should not

have been forced to reapply and compete for his job. And he does
not use it to refute Defendant's claim that "the settlement
agreement clearly states that [Mr. Buitrago] was returned to a
term position." Def.'s Mot., ECF No. 45 at 19. Furthermore,
since the personnel action was from 2010 and the settlement
agreement was from 2013, *see* SOMF, ECF No. 45-1 ¶ 31; Mr.
Buitrago's evidence has no bearing on Defendant's argument or
evidence. Therefore, the Court concludes that Mr. Buitrago has
conceded the argument and abandoned his retaliation claim based
on being forced to reapply and compete for his job.

Mr. Buitrago's claim that he was not allowed to return to
his former duties seems to correspond with his argument on this
motion that he was not given work assignments by his supervisor.
However, Mr. Buitrago points to no evidence in the record
indicating a genuine dispute of material fact to survive summary
judgment. In his briefing, he cites to his own deposition, where
he claims that he was "not allowed" to return to "[a]ll of" his
duties. *See* Pl.'s Opp'n, ECF No. 47 at 5-6; Def.'s Ex. 2, ECF
No. 45-4 at 18. He states that this action was an "adverse
action," sufficient to sustain a claim of retaliation because
Mr. Buitrago "was not given work assignments by his supervisor,
who was angered by [his] actions in contacting the supervisor's
superiors in an effort to find substantive work." Pl.'s Opp'n,

ECF No. 47 at 5.

Even if the Court were to assume *arguendo* that this action qualifies as an adverse action for a retaliation claim, Mr. Buitrago does not argue and points to no evidence connecting this action to his protected activity. In the Court's previous opinion ruling on Defendant's Motion to Dismiss, this Court allowed Mr. Buitrago's claim to proceed because he was not required "to establish each element of his *prima facie* case at the motion to dismiss stage," MTD Op., ECF No. 35 at 26; and his allegations of "temporal proximity" were "sufficient to withstand the District's Motion to Dismiss," *id.* at 28. However, on this Motion for Summary Judgment, Mr. Buitrago does not state in his briefing nor point to any evidence in the record establishing when the purported adverse action occurred. Thus, the Court has no basis to infer a causal connection through temporal proximity. Furthermore, Mr. Buitrago offers no other evidence or argument explaining the causal connection for this adverse action. In his briefing, he only argues that a causal connection exists based on temporal proximity for the adverse action of being terminated. *See* Pl.'s Opp'n, ECF No. 47 at 6 ("A causal connection is demonstrated in this case because Plaintiff's employer began moving to terminate Plaintiff *four months after* he was granted permission to file a formal EEOC complaint relating to his attempted protected activity

communicating with HR about his concerns."). Therefore, the Court agrees with Defendant that there is "no evidence to suggest that [Mr. Buitrago] was prevented from performing his job duties as retaliation for his EEO activity." Def.'s Mot., ECF No. 45 at 18.

Because Mr. Buitrago has either conceded, abandoned, or failed to show a genuine dispute of material fact on his remaining retaliation claims, the Court **GRANTS** Defendant's Motion for Summary Judgment on those claims.

The Court now turns to the two adverse actions Mr. Buitrago identifies in his briefing on this motion but were not included in this Court's list of claims surviving Defendant's prior Motion to Dismiss. First, Mr. Buitrago claims that he "suffered adverse actions following his protected activity when he was subjected to negative evaluation comments and reprimands from his supervisor, Ms. Quick." Pl.'s Opp'n, ECF No. 47 at 5. However, as Defendant points out, this is the first time Mr. Buitrago has attempted to base a retaliation claim on these actions. In the Third Amended Complaint, Mr. Buitrago stated that he "received negative evaluations with comments about his communication skills and was required to undergo training." Third Am. Compl., ECF No. 29 ¶ 43. But he claimed that "[t]hese evaluations were discriminatory in nature because [Mr. Buitrago] was the only Hispanic male under Quick's supervision, and she

favored other African American females under her supervision."
*Id.* ¶ 46. Furthermore, in his description of the claims of
retaliation, he makes no mention of the evaluation or comments.
*See id.* ¶¶ 97-99 (describing as retaliatory the acts of not
being allowed to return to his previous position, being
transferred to a new position, being forced to apply for his
position, being subjected to administrative leave, being
terminated, and Defendant withdrawing authorization for medical
treatment for his disability). Finally, Mr. Buitrago never
advanced this retaliation claim in response to Defendant's prior
Motion to Dismiss. *See generally* MTD Op., ECF No. 35. It is
well-established that "a plaintiff is not permitted to raise new
claims at the summary judgment stage, where those claims were
not pleaded in the complaint." *Taylor v. Mills*, 892 F. Supp. 2d
124, 137-38 (D.D.C. 2012) (collecting cases). Therefore, the
Court may not consider Mr. Buitrago's retaliation claim based on
the negative comments and evaluation.

The other claim Mr. Buitrago attempts to advance in his
briefing is a claim for retaliation based on his being "place[d]
on administrative leave in late 2016 and ultimately terminated
in May 2017 under the guise of a reduction in force." Pl.'s
Opp'n, ECF No. 47 at 6. This exact claim was dismissed by this
Court for failing to exhaust administrative remedies. *See* MTD
Op., ECF No. 35 at 31 ("Mr. Buitrago may not proceed on his

retaliation claim based on his termination and being placed on administrative leave until the effective date of his termination . . . [because he] has not exhausted his administrative remedies as to his allegation that he was terminated in retaliation for engaging in protected activity."). Mr. Buitrago fails to mention this Court's dismissal, much less argue that the decision was erroneous. Therefore, the Court stands by its previous conclusion and refuses to consider Mr. Buitrago's retaliation claim based on his termination and administrative leave.

## IV. Mr. Buitrago's Representation Issues

On August 23, 2023, the Court granted Mr. Buitrago's counsel's Motion to Withdraw and stayed proceedings in the case. The Court stated that "[i]f new counsel has not entered an appearance by October 30, 2023, Mr. Buitrago shall submit a status report by that date informing the Court of the status of his efforts to obtain new counsel or whether he will proceed pro se." Minute Order (Aug. 28, 2023). Thereafter, the Court granted Mr. Buitrago an extension of time to respond to the court by November 30, 2023. *See* Minute Order (Nov. 21, 2023). Mr. Buitrago failed to respond to the Court's order. *See generally* Docket for Case 18-cv-261. On January 3, 2024, the Court *sua sponte* ordered Mr. Buitrago to submit a status report informing the Court by no later than January 31, 2024 of the status of his efforts to secure representation. *See* Minute Order (Jan. 4,

2024). On February 7, 2024, the Court denied leave to file a Notice of Appearance by putative counsel for Mr. Buitrago because said counsel is not a member of the Bar of the District Court for the District of Columbia and failed to comply with the local rules regarding appearance *pro hac vice*. *See* Minute Order (Feb. 7, 2024). On March 21, 2024, the Court again sua sponte issued a Minute Order directing Mr. Buitrago to inform the Court by no later than April 20, 2024 of his attempts to secure representation. *See* Minute Order (Mar. 21, 2024). Mr. Buitrago failed to comply with this Minute Order. Although Mr. Buitrago has failed to comply with the Court's orders, in an abundance of caution, the Court will lift the stay in this case and delay entry of the Order effectuating this Memorandum Opinion and the Final Judgment in this case for 30 days.

## V.   Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 45. A separate Order will accompany this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 3, 2024**